# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JERMAINE D. HARRIS,

    Petitioner,

    v.

STEPHEN T. MOYER, *Secretary, Maryland Department of Public Safety and Correctional Services*,
WAYNE A. WEBB, *Commissioner, Maryland Department of Corrections*,
FRANK B. BISHOP, *Warden of the North Branch Correctional Institution, Cumberland, Maryland*, and
THE ATTORNEY GENERAL OF MARYLAND,

    Respondents.

Civil Action No. TDC-15-3745

## MEMORANDUM OPINION

Petitioner Jermaine Harris, an inmate at the North Branch Correctional Institution in Cumberland, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 to collaterally attack his 2009 conviction for first degree murder and related charges in the Circuit Court for Wicomico County, Maryland. Having considered the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6; *Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the reasons set forth below, the Petition is DENIED and DISMISSED.

## BACKGROUND

On October 30, 2008, Harris was convicted after a jury trial in the Circuit Court for Wicomico County ("the Circuit Court") of first degree murder, second degree murder,

conspiracy to commit murder, and related firearms charges relating to the shooting death of Jesse Gay on February 29, 2008. The jury found Harris not guilty of first degree assault. On March 12, 2009, Harris was sentenced to two consecutive life sentences for first degree murder and conspiracy to commit murder and a consecutive 20-year sentence for use of a handgun in the commission of a crime of violence.

On direct appeal, Harris presented the following questions to the Court of Special Appeals of Maryland:

1. Whether the trial court erroneously prohibited Harris from having two witnesses, Michael Lawson and Rodney Terry, invoke their Fifth Amendment privilege in the presence of the jury or, alternatively, erroneously failed to advise the jury that the witnesses had invoked their Fifth Amendment privilege.

2. Whether the trial court erroneously permitted a lay witness to present expert testimony concerning cell phone records and cell phone tower locations.

3. Whether the evidence was legally sufficient to support the conviction for conspiracy to commit murder where there was no independent corroboration of the accomplice's testimony.

4. Whether the jury's verdict of guilty of first degree murder and not guilty of first degree assault constituted a legally inconsistent verdict, which is no longer permissible in Maryland.

On June 29, 2011, the Court of Special Appeals affirmed Harris's conviction. Harris filed a petition for a writ of certiorari with the Court of Appeals of Maryland which was denied on October 25, 2011.

On June 24, 2013, Harris filed a petition for post-conviction relief in the Circuit Court. The claims asserted, as amended and supplemented, were that trial counsel was ineffective for: (1) failing to object to the court permitting a lay witness to give expert opinion testimony about cell phone technology and cell tower locations; (2) failing to object to the rendering of the apparently inconsistent verdicts of guilty on the charge of first degree murder but not guilty on

the charge of first degree assault; (3) failing to object to jury instructions on "aiding and abetting" as a theory of liability as not warranted by the evidence; (4) failing to request jury instructions regarding a witness pleading guilty, a witness invoking the Fifth Amendment right against self-incrimination, and the jury's duty to deliberate; (5) failing to interview and call as a trial witness Brykeshia Johnson; and (6) the cumulative effect of these errors.

After a hearing, the post-conviction court denied the petition on January 17, 2014. On February 12, 2014, Harris filed an application for leave to appeal the denial of post-conviction relief in which he asserted the arguments that trial counsel was ineffective for: (1) failing to object to a lay witness providing expert opinion testimony about the operation of cell phone technology and cell tower locations; (2) failing to object to the rendering of apparently inconsistent verdicts; and (3) failing to request a jury instruction regarding witnesses invoking the Fifth Amendment. The application was summarily denied on September 30, 2014. On September 8, 2015, Harris's motion for reconsideration was denied, and the Court of Special Appeals issued its mandate.

## DISCUSSION

In his Petition to this Court, Harris raises the following claims for relief:

1. The trial court erred when it permitted a lay witness to testify regarding cellular phone technology and tower locations in violation of state and federal law.

2. Trial counsel was ineffective by failing to object to a lay witness providing expert opinion testimony about the operation of cell phone technology and cell tower location.

3. Trial counsel was ineffective by failing to object to the admission of call records from Harris's phone service provider and to expert testimony relating to those records.

4. Trial counsel was ineffective by failing to refute the State's aiding and abetting theory of liability.

3

5.     Appellate counsel was ineffective by failing to argue that the admission of hearsay testimony from government witnesses Nathaniel Kellam and Krista Wilson violated the Constitution.

6.     Trial counsel was ineffective when counsel failed to investigate, interview, and call as a trial witness Harris's girlfriend, Brykeshia Johnson.

7.     Trial counsel was ineffective when counsel failed to review the jury instructions, object to certain instructions, and request relevant instructions.

8.     Trial counsel was ineffective when counsel failed to object to the inconsistent verdicts rendered.

9.     The cumulative effect of the errors made by trial counsel denied Harris effective assistance of counsel.

Respondents assert that only claims 2 and 8, and the part of claim 7 relating to the failure to request an instruction on witnesses invoking the Fifth Amendment, may be reviewed on the merits. They argue that the remaining claims are either unexhausted (claims 3 and 5) or procedurally defaulted (claims 1, 4, 6, and 9 and the remainder of claim 7). Harris counters that the claims that are allegedly unexhausted should be treated as claims that are procedurally defaulted, and that any procedurally defaulted claims are still reviewable because he has established cause for the default and prejudice.

## I.     Legal Standard

A petition for a writ of *habeas corpus* may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2012). The federal *habeas* statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of *habeas* corpus unless the state court's adjudication on the merits (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

A state court adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Supreme Court decision. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). "[A] federal *habeas* court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 599 U.S 766, 773 (2010). The state court's application of federal law must be "objectively unreasonable." *Id.*

"[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This principle is especially applicable where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379. "[A] state-court factual determination is not unreasonable merely because the federal *habeas* court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The fact that "reasonable minds reviewing

the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II. Exhaustion of State Remedies

To succeed on a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, a petitioner must establish exhaustion of all available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Rose v. Lundy*, 455 U.S. 509, 510 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert it in an appeal to the Court of Special Appeals of Maryland and then to the Court of Appeals of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 12-201, 12-301 (West 2013). To exhaust a claim through post-conviction proceedings, a defendant must assert it in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101 to -103 (West 2011). After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Court of Special Appeals. *Id.* § 7-109. If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202. If the application is granted, but relief is denied on the merits of the claim, a petitioner must then file a petition for writ of certiorari to the Court of Appeals of Maryland. *See Williams v. State*, 438 A.2d 1301, 1304-05 (Md. 1981).

Respondents assert that claim 3, that trial counsel was ineffective by failing to object to the admission of call records from Harris's phone service provider, and claim 5, that appellate counsel was ineffective by failing to argue that the admission of hearsay testimony from government witnesses Nathaniel Kellam and Krista Wilson violated the Constitution, were not exhausted. These claims have never been raised in any state court. Although Harris's direct appeal and petition for post-conviction relief have been resolved, and Maryland prisoners are limited to one post-conviction proceeding as of right, Md. Code Ann., Crim. Proc. § 7-103, Respondents contend that Harris has not exhausted these claims because he could still present them to a state court through a motion to reopen the post-conviction proceedings. Under Maryland law, prisoners may move to reopen their post-conviction proceedings to assert new claims. *See* Md. Code Ann., Crim. Proc. § 7-104; *Baker v. Corcoran*, 220 F.3d 276, 291 (4th Cir. 2000). Where it is undisputed that Harris has not done so, these claims would appear to be unexhausted. *See* 28 U.S.C § 2254(c) (stating that claims are not exhausted when a petitioner "has the right under the law of the State to raise, by any available procedure, the question presented"); *Baker*, 220 F.3d at 291 (holding that a petitioner had exhausted claims where he had presented them for the first time in a Maryland motion to reopen post-conviction proceedings); *see also Stokes v. Bishop*, No. RDB-12-840, 2014 WL 1320139, at *3 (D. Md. Mar. 27, 2014) (holding that claims not previously presented to a state court were not exhausted where the petitioner could file a motion to reopen post-conviction proceedings).

Harris argues that the claims should be deemed exhausted because they are now plainly procedurally barred. A claim not presented to a state court is still exhausted "if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to a state court." *Baker*, 220 F.3d at 288. The Court cannot make that finding. In Maryland, the

state court may reopen a post-conviction proceeding if it determines that it is "in the interests of justice" to do so. Md. Code Ann., Crim. Proc. § 7-104; *see also Alston v. State*, 40 A.3d 1028, 1034 (Md. 2012) (describing the purpose of section 7-104 as "providing a safeguard for the occasional meritorious case where the convicted person had already filed one postconviction petition"). "There is no entitlement to have a closed postconviction proceeding reopened unless the petitioner asserts facts that, 'if proven to be true at a subsequent hearing[,] establish that postconviction relief would have been granted but for the ineffective assistance of ... postconviction counsel." *Harris v. State*, 862 A.2d 516, 527 (Md. Ct. Spec. App. 2004) (quoting *Stovall v. State*, 800 A.2d 31 (Md. Ct. Spec. App. 2002)) (alterations in original). Here, however, Harris is explicitly arguing that the failure to assert these claims previously was the result of ineffective assistance of post-conviction counsel, a recognized basis to reopen post-conviction proceedings. *See* Reply at 5-6, ECF No. 6. Because the Court cannot determine with certainty whether the state court would reopen the post-conviction proceedings on that basis, it is not "clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to a state court." *Baker*, 220 F.3d at 288. Accordingly, the Court concludes that where Harris has not yet presented claims 3 and 5 to the state court through a motion to reopen proceedings, they are unexhausted. *See id.* at 291.

Where a petition contains both exhausted and unexhausted claims, the case should ordinarily be dismissed. *Rose*, 455 U.S. at 521-22. Alternatively, a court may stay the case pending exhaustion of the unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 274-75 (2005). This remedy of "stay and abeyance" should be available only in limited circumstances" because frequent use of it would undermine congressional intent of encouraging finality and streamlining *habeas* proceedings. *Id.* at 277. Thus, to establish his entitlement to a stay, Harris must show

that (1) "good cause exists for his failure to exhaust"; (2) "his unexhausted claims are potentially meritorious"; and (3) he has not "engaged in intentionally dilatory litigation tactics." *Id.* at 278. Harris has not made the requisite showing. He has provided no good cause for present counsel's failure to file a motion to reopen rather than asserting claims 3 and 5 for the first time in this federal Petition. Moreover, he has not shown how these claims are potentially meritorious. The core of claim 3 is that trial counsel was ineffective for failing to object to the admission of cell phone records because they were unauthenticated and constituted hearsay. It is firmly established, however, that phone records do not constitute inadmissible hearsay because they are not testimony and they are admissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6); *United States v. Wills*, 346 F.3d 476, 490 (4th Cir. 2003) (holding that it was not error to admit cell phone records as business records). Harris has provided no basis to conclude that the records were not authentic and accurate, or that, upon objection, an appropriate foundation could not have been provided to support their admission.

As for claim 5, that appellate counsel was ineffective by failing to argue that the admission of hearsay testimony from government witnesses Nathaniel Kellam and Krista Wilson violated the Constitution, Harris has not identified what specific testimony was improperly admitted and why it was an error of constitutional magnitude. Nevertheless, the only statement by Wilson, Jesse Gay's girlfriend, to which trial counsel objected was her statement that Gay told her that he thought Harris was up to something and that Gay planned to rob Harris. Kellam also testified that Gay told him he planned to kill Harris. Both statements likely constituted admissible statements of then-existing state of mind. *See* Fed. R. Evid. 803(3). Thus, the Court declines to stay the Petition pending exhaustion of claims 3 and 5 in state court.

Nevertheless, dismissal of the Petition in the entirety is not required if the petitioner withdraws the unexhausted claims. *Rose*, 455 U.S. at 520. Here, Harris has affirmatively stated that in the event that the Court deems the Petition to contain both exhausted and unexhausted claims, he "would affirmatively withdraw his unexhausted claims." Reply at 7. Based on that statement, the Court will dismiss claims 3 and 5 and proceed to consider the remaining claims.

## III.    Procedural Default

Respondents assert that claims 1, 4, and 6, and parts of claim 7, were procedurally defaulted and are therefore barred. A claim is procedurally defaulted if a "state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A claim has also been procedurally defaulted where a petitioner has failed to present it to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to timely note an appeal); *Murray v. Carrier*, 477 U.S. 478, 490-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46-47 (1972) (failure to raise claim in state petition for post-conviction relief); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). In addition, a procedural default has occurred when a *habeas* petitioner did not present the claim to a state court, and the state court "to which the petitioner would be required to present his claims . . . would now find the claims procedurally barred." *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).

If a procedural default has occurred, a federal court may still address the merits of a state defendant's *habeas* claim if the petitioner can show both cause for the default and actual

prejudice that would result from failing to consider the claim on the merits. *See Murray*, 477 U.S. at 494-95; *Breard*, 134 F.3d at 620. "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Procedural default may also be excused if the failure to consider the claim on the merits would result in a miscarriage of justice, as demonstrated by a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U. S. at 496. "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Here, there has been no credible showing of actual innocence, so the Court will address only cause and prejudice when considering whether particular claims that are procedurally defaulted may nevertheless be reviewed.

## A.     Testimony on Cell Tower Locations

On claim 1, Harris alleges trial court error in permitting testimony by Sgt. Scott Cook of the Maryland State Police, Homicide Unit, regarding cell phone technology and cell tower locations. Harris argues that Sgt. Cook's testimony violated his due process rights because it consisted of improper expert testimony by a lay witness, in violation of both Federal Rule of Evidence 701 and Maryland Rule 5-702. Respondents assert that this claim is procedurally defaulted because the Maryland Court of Special Appeals, on direct review, denied this claim on the state procedural ground that it was not preserved for appellate review.

In considering this claim on direct appeal, the Court of Special Appeals noted that Harris had "wholly failed to object or raise any issue regarding Cook's testimony by pre-trial motion or objection at trial" and thus declined to review the matter. Direct Appeal Op. at 15, ECF No. 1-13. Specifically, the court referenced Maryland Rule 8-131, which states that "[o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8-131(a). The court further noted that pursuant to *State v. Brady*, 903 A.2d 870 (Md. 2006), it could review the claim under a plain error standard if the error was "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial," but concluded that the standard had not been met. Direct Appeal Op. at 16 (quoting *Brady*, 903 A.2d at 873). Where the Court of Special Appeals resolved this claim on a state procedural rule that provided an independent and adequate ground for dismissal, the Court finds that this claim was procedurally defaulted. *See Breard*, 134 F.3d at 619.

As for whether Harris has demonstrated cause for the procedural default, he asserts, in conjunction with Claim 2, that the failure to object to Sgt. Harris's testimony constituted ineffective assistance of counsel. As noted by the Court of Special Appeals, however, the Maryland Court of Appeals did not rule that testimony regarding the location of cell phone towers associated with particular calls must be provided by an expert until 2010 at the earliest, two years after this trial. *See Wilder v. State*, 991 A.2d 172, 198 (Md. 2010). In fact, it is not clear that under federal law, Sgt. Cook's testimony was improper expert testimony. *See infra* part III.A. Where the need for an expert witness was not clearly established law at the time of the trial, the court properly determined that the failure to object was not "a dereliction of duty." Direct Appeal Op. at 16. Thus, the claim of ineffective assistance of counsel does not provide adequate cause to excuse the procedural default. Claim 1 will therefore be dismissed.

## B. Jury Instructions

Respondents argue that claim 4 relating to the failure to object to and refute an aiding-and-abetting jury instruction and argument, and parts of claim 7 relating to the failure to request jury instructions on a witness who had pleaded guilty and the jury's duty to deliberate, which Harris asserted in his state petition for post-conviction relief, are procedurally defaulted because Harris did not seek to appeal the denial of those claims by the post-conviction court. As discussed above, a claim asserted in state court is procedurally defaulted where the petitioner fails to present it to the highest state court with jurisdiction to hear it, whether on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal. *See Coleman*, 501 U.S. at 749-50; *Murray*, 477 U.S. at 491-92. The Court must therefore consider whether Harris has shown cause and prejudice to excuse the default.

As cause, Harris generally asserts ineffective assistance of counsel by post-conviction counsel in failing to include these claims in the application for leave to appeal submitted to the Court of Special Appeals. The United States Supreme Court has held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). The Court observed that:

> [A] prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id.* at 14.

Harris first claims that trial counsel was ineffective when counsel failed to object to the trial court's aiding-and-abetting instruction and failed to refute the State's argument in support of an aiding-and-abetting theory during closing argument. The failure to refute argument was not raised in the state court proceedings and must be deemed unexhausted and voluntarily dismissed. *See supra* part I. As for failure to object to the jury instruction, the post-conviction court observed that the aiding and abetting instruction "is practically automatic when there are two or more perpetrators involved in a crime" and rejected the claim on the basis that the decision whether to object to a jury instruction is a tactical one. Post-Conviction Op. at 10, ECF 1-5. The Court finds that the failure to assert this claim on appeal of the post-conviction review was not ineffective under *Strickland* because it was not a substantial claim. Here, the evidence showed that there were at least two individuals involved in the murder of Gay, including Kellam, who was an admitted accomplice. In closing argument, the State referenced the aiding-and-abetting instruction for purposes of establishing that Matthew Spence, a witness to the murder, had not aided and abetted the crime and thus was not an accomplice, in order to argue that Spence's testimony could properly corroborate the accomplice testimony of Kellam. Where Harris has not shown how the inclusion of the instruction was improper under federal or state law, the Court finds that he has not shown cause or prejudice, or a substantial claim as required by *Martinez*. *See Martinez*, 566 U.S. at 14.

Harris also has not shown cause and prejudice relating to the remaining procedurally defaulted jury instruction claims. Harris argues that post-conviction counsel was ineffective by failing to appeal the issue of the lack of a jury instruction that a witness's plea of guilty to a crime arising from the same events underlying the charged offense is not evidence of the guilt of the defendant. The post-conviction court, however, concluded that such an instruction was, in

fact, given. Although the specific language now proposed by Harris was not used, the trial court instructed the jury that testimony by an accomplice must be viewed with caution and had to be corroborated in order to find the defendant guilty, and that testimony by a witness pursuant to a plea agreement must be viewed with caution. Harris has not shown how where the jury was given specific instructions warning about relying on the testimony of witnesses who had pleaded guilty, that the failure of post-conviction counsel to continue to pursue this issue was ineffective and "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

As for the failure to request an instruction on the jury's duty to deliberate, the post-conviction court observed that such an instruction is not required under Maryland law. *See Kelly v. State*, 310 A.2d 538, 541 (Md. 1973). Harris has cited no federal or state authority requiring such instruction and has offered no specific argument why the lack of such an instruction "worked to his actual and substantial disadvantage" as to cause prejudice sufficient to overcome the procedural default. *Murray*, 477 U.S. at 494.

### C.    Brykeshia Johnson

Harris also claims that trial counsel was ineffective for failing to interview and call to the stand Harris's girlfriend, Brykeshia Johnson. As with the jury instruction claims discussed above, this claim was not included in the application for leave to appeal and was thus procedurally defaulted. Although Harris argues that the default should be excused because of ineffective assistance of post-conviction counsel, the Court is not convinced. In considering this argument, the post-conviction court noted that Harris had offered nothing more about Johnson other than that she "*could* have provided mitigating evidence, which *could* have helped the

defense." Post-Conviction Op. at 13. The post-conviction court then properly rejected the claim because Harris had not "met his burden to establish that Ms. Johnson's testimony would have included any relevant evidence whatsoever." *Id.*

In his Petition filed with this Court, Harris offers little more to establish the importance of Johnson as a witness and provides no basis to support the conclusion that post-conviction counsel was ineffective in failing to advance this argument and assert it in the application for leave to appeal. Harris states only that "Ms. Johnson would have conflicted the key witnesses of the times coming and going to the trailer park." Mem. Supp. Pet. at 21, ECF No. 4. In closing argument, the State referenced testimony by Kevin Dorsey that Harris, Kellam, and Spence were at the trailer park and left at 2:58 a.m. and returned at 5:00 a.m., but this testimony was corroborated by verifiable facts, including a text message by Dorsey at 2:58 a.m., and cell phone records showing that Harris had left the trailer park and went to the vicinity of the murder scene. Through the testimony of Brent Timmons, a farmer who lived on the road where the murder occurred, the time of the murder was established as 3:43 a.m. when he heard three gunshots fired. Harris has not shown how Johnson, who had a personal relationship with Harris, would have provided convincing evidence to refute the objective facts so as to have altered the outcome of the case. Accordingly, Harris has not established cause and prejudice to warrant consideration of this procedurally defaulted claim.

## IV.    Ineffective Assistance of Counsel

Harris raises three ineffective assistance of counsel claims that are exhausted and not procedurally defaulted. A defendant "has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017). Thus, in order to prevail on an ineffective assistance of counsel claim, a petitioner

must meet the two-part standard set by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense" in that "counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable." *Id.* "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison,* 477 U.S. 365, 374 (1986). Thus, in order to prevail, the defendant must show "both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 375.

## A.     Expert Testimony

The post-conviction court considered Harris's claim that the failure to object to a lay witness, Sgt. Cook, testifying about cell phone technology and  cell tower locations constituted ineffective assistance of counsel. In denying this claim, the court noted that:

> In October 2008, as far as the undersigned judge is aware, no Maryland appellate court had opined on the necessity *vel non* of expert witness testimony with respect to cellular telephone tracking technology. The earliest reported case in Maryland appears to be *Wilder v. State,* [991 A.2d 172], which was decided on 25 March 2010. Therefore, neither Judge Beckstead nor trial counsel had the benefit of any Maryland appellate court guidance on the subject. Therefore, counsel's failure to object to Sergeant Cook's testimony did not render Petitioner's trial fundamentally unfair. The prejudice prong of the *Strickland* test has not been satisfied.

Post-Conviction Op. at 6-7.

Although Harris has cited several cases holding that expert testimony is required to explain cell phone technology, cell tower locations, and thus the locations from which cell phone calls were made, all of these cases post-date the 2008 trial in this case. *See, e.g., State v. Payne*, 104 A.3d 142, 155 (Md. 2014). Moreover, it is not clear under federal law that Sgt. Cook's testimony necessarily constituted expert testimony. In 2015, the United States Court of Appeals for the Fourth Circuit held that basic testimony by a cell phone service employee about how cell phones connect with cell towers with the strongest signal, and the range of cell towers, was not expert testimony, nor was testimony by a law enforcement agent who used cell phone records to map the locations of cell sites associated with certain calls. *United States v. Graham*, 796 F.3d 332, 364-66 (4th Cir. 2015), *reh'g en banc on other grounds*, 824 F.3d 421 (4th Cir. 2016). *Graham* did consider to be expert testimony certain testimony by the cell phone company employee providing technical details about certain operations by cell sites and how calls are routed through network switches. *Id.* at 365. Here, a review of Sgt. Cook's testimony reveals that other than a brief description of how cell phones use the nearest cell phone tower, his testimony largely consisted of taking information contained in cell phone records, such as the specific cell tower used for a call and whether the call was answered or not, and identifying the specific locations of those cell towers on a map. Such testimony appears to be consistent with what was deemed to be lay testimony in *Graham*, and in any event was not so clearly in the realm of expert testimony under federal law that failure to object to it would constitute deficient performance by counsel. Where Harris has not identified any federal or state case pre-dating the trial that clearly established that Sgt. Cook's testimony was impermissible expert testimony, and where under *Graham*, it may well be permissible lay testimony, the Court concludes that the post-conviction court's determination that trial counsel's failure to object was not ineffective

assistance of counsel was consistent with, and certainly not an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *see Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (stating that "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court).

## B.    Inconsistent Verdicts

In claim 8, Harris asserts that his trial counsel was ineffective when he failed to object to the inconsistent verdicts rendered by the jury. The post-conviction court rejected this claim. The court reasoned that under Maryland law, although legally inconsistent verdicts are not permissible, factually inconsistent verdicts are allowed. *See Price v. State*, 949 A.2d 619, 630 (Md. 2008) (holding that "inconsistent verdicts shall no longer be allowed"); *Teixeira v. State*, 75 A.3d 371, 379–80 (Md. Ct. Spec. App. 2013) (clarifying that *Price* applies to "legally inconsistent" verdicts, not "factually inconsistent" verdicts). "[A] legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instructions regarding the law," while "a factually inconsistent verdict is merely illogical." *Price*, 949 A.2d at 634 (Harrell, J., concurring). For example, a guilty verdict for possession of a handgun while engaged in drug trafficking is legally inconsistent with a not guilty verdict for the underlying drug trafficking offense, because commission of the drug trafficking offense is an element of the handgun charge. *Id.* at 636; *see Teixeira*, 75 A.3d at 380. The post-conviction court correctly found that to the extent that the second degree murder conviction and first degree assault acquittal were inconsistent, they were factually inconsistent. Furthermore, the post-conviction court reasonably found that defense counsel was not ineffective for failing to object to the verdicts because a further instruction to the jury to reach "factually consistent verdicts would likely result in

[Harris's] being found guilty of both first degree assault and second degree murder." Post-Conviction Op. at 10.

Finally, the Court notes that the failure to object was consistent with federal law. Under federal law, inconsistent jury verdicts are permissible. In *United States v. Powell*, 469 U.S. 57 (1984), a jury convicted a defendant of using a telephone in furtherance of a drug trafficking offense, but acquitted him of the underlying drug offense, conspiracy to possess with intent to distribute controlled substances, even though commission of the conspiracy charge was an element of the telephone offense. *Id.* at 60-61. The Supreme Court reaffirmed the longstanding federal principle, based on *Dunn v. United States,* 284 U.S. 390 (1932), that consistency in the verdict is not necessary. *Powell*, 469 U.S. at 64. Specifically, the Court held that even when verdicts "could not be rationally reconciled," there is no basis to vacate the defendant's conviction, as it cannot be determined which inconsistent verdict is incorrect. *Id.* at 69. Thus, where federal law permits inconsistent verdicts and Maryland law allows factually inconsistent verdicts, the post-conviction court's conclusion that failure to object to the arguably inconsistent verdicts was not ineffective assistance of counsel was an reasonable application of federal law. 28 U.S.C. § 2254(d). The Petition will be denied as to this claim.

## C. Fifth Amendment Jury Instruction

Harris also claims that his trial counsel was ineffective for failing to request an instruction informing the jury that certain witnesses could invoke the Fifth Amendment right against self-incrimination and refuse to testify. At trial, Harris sought the testimony of two potential witnesses, Michael Lawson and Rodney Terry, who had been charged with robbery of man named Australia Mackey that occurred in Delaware approximately 24 hours before Gay was killed. Gay was a suspected participant in that robbery. The State originally intended to call

20

Lawson and Terry as witnesses to disavow involvement in the murder of Gay, but relented when it was clear that they would assert their Fifth Amendment rights to avoid incrimination for the robbery. Defense counsel, however, sought their testimony based on a theory that Kellam, Spence, Lawson, and Terry had visited Mackey at the hospital the day before Gay's murder and were instructed by Mackey to kill Gay. Defense counsel noted that Kellam had made statements asserting that Lawson and Terry had been present at the murder of Gay and so wanted to call them as witnesses to ask whether they were, in fact, at the scene. The trial court, over defense counsel's objection, allowed Lawson and Terry to invoke their Fifth Amendment rights outside of the presence of the jury. The trial court acknowledged that under *Gray v. State*, 796 A.2d 697 (Md. 2002), a court has discretion to require a witness sought by the defense to invoke Fifth Amendment rights in the presence of the jury where there is evidence that the witness may have committed the crime with which the defendant was charged. *Id.* at 717. However, the trial court reasoned that Lawson and Terry had a basis for invoking the Fifth Amendment unrelated to the murder of Gay, specifically, the Delaware robbery case, because acknowledging interactions with Gay, the alleged shooter of Mackey, during that time frame could incriminate them in the robbery. Thus, invocation in the presence of the jury could unfairly lead the jury to infer that the Fifth Amendment invocation necessarily related to potential liability for the murder of Gay. The Maryland Court of Special Appeals concluded on direct review that the trial judge's refusal to require the invocation to take place in front of the jury was not an abuse of discretion  Direct Appeal Op. at 13-14. Where trial counsel objected to the failure to require invocation in the presence of the jury, there was no ineffective assistance of counsel on this issue. Although Harris also references the failure to require another witness, Sturgis, to invoke the Fifth Amendment in the presence of the jury, that witness's testimony was sought by the State, so he

was subject to the general rule that invocation occurs outside the presence of the jury. *See Gray*, 796 A.2d at 714.

Harris now claims that his trial counsel was ineffective for not requesting, and objecting to the lack of, a jury instruction that certain witnesses could invoke the Fifth Amendment to avoid self-incrimination, so that the jury could infer that Lawson and Terry may have been responsible for the murder of Gay. Under Maryland law, where a potential defense witness is sought because he may have committed the charged crime, but that witness invokes the Fifth Amendment outside the presence of the jury, "the trial court, upon appropriate request, should give a full instruction to jury, that the witness . . . had invoked his right against self-incrimination, and, therefore, is unavailable to the defendant." *Gray*, 796 A.2d at 717-18. Under federal law, however, there is no comparable rule. In an unpublished decision, the Fourth Circuit upheld a district court's refusal to provide an instruction describing the Fifth Amendment privilege. *See United States v. Barton*, 176 F.3d 476, at *2 (4th Cir. 1999) (unpublished table decision). To the extent that federal courts have addressed this issue in published opinions, it has been in the context of requests for a defense request for a "missing witness" instruction when a witness asserts the Fifth Amendment privilege against self-incrimination. Courts generally have concluded that such an instruction is not necessary. *See, e.g., United States v. Rios*, 636 F.3d 168, 172 (5th Cir. 2011); *United States v. St. Michael's Credit Union*, 880 F.2d 579, 597–99 (1st Cir. 1989); *United States v. Simmons*, 663 F.2d 107, 108 (D.C. Cir. 1979). *But see United States v. Myerson*, 18 F.3d 153, 160 (2d Cir. 1994) (noting that if the witness is exculpatory, a missing witness instruction may be warranted).

In rejecting this claim, the post-conviction court stated that Harris did not "offer any explanation as to how the lack of *Gray*-type jury instruction may have led the jury to make

assumptions unfavorable to him, nor how such instruction may have resulted in a different outcome." Post-Conviction Op. at 11. Indeed, courts generally will not allow counsel to argue that a witness's invocation of the Fifth Amendment establishes the witness's guilt or any other fact. "Very rarely will [the rules of evidence] allow a party to argue inferences from a witness's privilege invocation" because "[a] third party's privilege invocation is not often relevant," and "even if the party seeking to argue the inference concocts a reason that the silence may be relevant, the danger of unfair prejudice usually outweighs the probative value because there is no way the opponent can test the meaning attributed to the invocation." *United States v. Reyes*, 362 F.3d 536, 542 (8th Cir. 2004) (holding that absent extraordinary circumstances, a witness should not be required to invoke the Fifth Amendment in the presence of the jury).

Here, the post-conviction court's determination that Harris failed to show prejudice from the lack of this jury instruction was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). It was undisputed that other than the recanted statements by Kellam, there was no other evidence that Lawson and Terry were at the scene of the murder. Indeed, as discussed above, the trial court determined that the most likely reason for the invocation of the Fifth Amendment by Lawson and Terry was concern over being implicated in the Delaware robbery, not the Gay murder. Under these circumstances, Harris has not shown that there was a reasonable probability that the jury would have properly concluded, from their invocation, that those individuals were responsible for the murder. The Court thus concludes that the lack of a request for an instruction, if error, was not "so serious as to deprive the defendant of a fair trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Finally, regardless of whether Harris's claim that the cumulative effect of errors by counsel warrants granting of the Petition was procedurally defaulted, the Court rejects that claim. To the extent that some of the alleged errors were in fact deficiencies by counsel, they do not collectively rise to the level of establishing prejudice under *Strickland* sufficient for Harris to prevail on the Petition.

## V.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability may issue only if the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Harris's claims have been dismissed on both substantive and procedural grounds. Upon review of the record, this Court finds that Harris has not made the requisite showing. The Court therefore declines to issue a certificate of appealability. Harris may still request that the United

States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus is DENIED and DISMISSED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: October 22, 2018

THEODORE D. CHUANG
United States District Judge